**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MELVIN LANE, <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>NANCY A. BERRYHILL, <br>ACTING COMMISSIONER OF <br>SOCIAL SECURITY, <br><br>　　　　　Defendant. | Civil Action No. 17-13203 (MAS) <br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Melvin Lane's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court remands this matter for further analysis.

**I.　BACKGROUND**

**A.　Procedural History**

Plaintiff filed an application for DIB on September 30, 2014, and an application for SSI on October 24, 2014, both alleging disability beginning on January 1, 2014. (Administrative Record

("AR") 73, 238-47.)[1] These claims were denied initially on February 12, 2015 and again upon reconsideration on March 31, 2015. (*Id.* at 73-90, 93-108.) The Administrative Law Judge ("ALJ") conducted an administrative hearing on April 18, 2017, following which the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 18-27, 33-66.) The Appeals Council denied Plaintiff's request for review on October 18, 2017. (*Id.* at 1-4.) On December 18, 2017, Plaintiff filed an appeal to the District Court of New Jersey and the matter was assigned to the Undersigned. (ECF No. 1.) The case was reassigned to Chief Judge Jose L. Linares on April 13, 2018. (ECF No. 7.) The Commissioner filed the AR on May 8, 2018. (ECF No. 10.) Plaintiff filed his moving brief on August 24, 2018, pursuant to Local Civil Rule 9.1. (ECF No. 16). The Commissioner filed opposition on October 9, 2018. (ECF No. 17.) Plaintiff did not reply. On February 4, 2019, this case was reassigned to the Undersigned for all further proceedings. (ECF No. 18.)

B.  **Factual History**

Plaintiff is a sixty-two year old male born March 30, 1956. (AR 238.) He did not complete high school, but subsequently acquired a general equivalence degree. (*Id.* at 43.) He served as a cook in the Navy from 1978 to 1982. (*Id.* at 316.) Plaintiff worked as a farm laborer from 1983 to 1988, and as a material handler in shipping and receiving at a chemical plant from 1989 to 2012. (*Id.* at 267, 316.)

Plaintiff has received treatment for various conditions, including osteoarthritis in his knees, hand degenerative joint disease, degenerative joint disease of the bilateral knees, lumbar facet dysfunction, myofascial spasm, lumbago, sciatica, and sleep apnea syndrome. (*Id.* at 324, 338, 347-48, 352, 358, 428.) Plaintiff is prescribed alprazolam, atorvastatin, Bactroban,

---

[1] The AR is located at ECF Nos. 10-1 through 10-8. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF citations within those files.

cyclobenzaprine, erythromycin, Flonase, ibuprofen, Levaquin, losartan, Mobic, Norvasc, nystatin, Percocet, potassium chloride, vitamin-D and Zyrtec for his conditions. (*Id.* at 381.)

At the hearing, Plaintiff's attorney indicated that Plaintiff has issues with his wrists, left Achilles tendon, left hip, knees and back. (*Id.* at 38.) Plaintiff testified that he is not married and that he lives with his nephew and great-nephew. (*Id.* at 41.) He relies on his sister for transportation assistance, and at times uses public transportation because he does not have a driver's license. (*Id.* at 42-43.) Plaintiff testified that he supports himself through welfare, and he is insured through "Obamacare." (*Id.* at 43.) He also testified that he received an "other-than-honorable" discharge from the Navy, has been arrested for "misdemeanors," and has served ninety days in jail. (*Id.* at 43-44.) Plaintiff indicated that he stopped working because: he "can[not] stand up long enough"; he "can[not] move around too much or walk too far"; his "Achilles tendon swells up"; his "left side gets to hurting"; if he "stand[s] too long the middle of [his] back pain kills [him]"; and he "can[not] do [any] lifting because of [his] wrists[.]" (*Id.* at 46.) Plaintiff further testified that after a visit to the emergency room, he began to use a cane as an assistive device. (*Id.* at 46-47.) Plaintiff was admitted to the emergency room twice: on October 2, 2013 (which precipitated use of the cane), and again on May 29, 2015. (*Id.* at 48, 52.) Plaintiff stated that in addition to the cane, he uses a mobilizer for his Achilles tendon and wears a brace for his wrists three times a day. (*Id.* at 50.) Plaintiff testified that at most he can walk a couple of blocks at a time before requiring a break. (*Id.* at 52.) Plaintiff also stated that he believes he is able to lift up to twenty pounds using both hands. (*Id.* at 54.) He indicated that he is able to perform household chores, such as making simple meals and vacuuming. (*Id.* at 55.)

C.  **The ALJ's Decision**

On May 12, 2017, the ALJ rendered a decision. (*Id.* at 18-27.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 19-20.) At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since January 1, 2014, the alleged onset date, despite Plaintiff's income from work performed after the alleged onset date. (*Id.* at 20.) At step two of the analysis, the ALJ found that Plaintiff had the severe impairments of "knee and hand arthritis" and "lumbar spine degenerative disc disease." (*Id.* at 21.)

At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to perform medium work with detailed limitations. (*Id.* at 22.) At step four, the ALJ found Plaintiff incapable of performing past relevant work. (*Id.* at 25.) At step five, relying on the testimony of the vocational expert ("VE"), the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and RFC, such as laundry worker, food service worker, and kitchen helper. (*Id.* at 25-26.) The ALJ, accordingly, found that Plaintiff had not been under a disability from January 1, 2014 through the date of the decision. (*Id.* at 26.)

II.  **LEGAL STANDARD**

A.  **Standard of Review**

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

4

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 127-28 (3d Cir. 1991); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)).

### B. **Establishing Disability**

In order to be eligible for entitlements under the Social Security Act, a claimant must be "unable to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The first step considers a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). To satisfy the first step, the claimant must establish that he has not engaged in any SGA since the onset of his alleged disability. *Id.* At the second step, the claimant must establish that he suffers from a severe impairment or "combination of impairments." 20 C.F.R. § 416.920(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies his burden, he proceeds to the third step. The third step of the evaluation procedure requires the claimant to provide evidence that his impairment is equal to one of those impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed disabled and is automatically entitled to benefits. *Id.* If his claim falls short, the eligibility analysis proceeds to step four.

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits him to resume his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). "A claimant's RFC

measures the most [he] can do despite [his] limitations." *Zirnsak*, 777 F.3d at 611 (citing 20 C.F.R. § 404.1545(a)(1)) (quotation omitted). If the Commissioner determines that the claimant cannot resume his past relevant work, the burden presumptively shifts to the Commissioner to show "the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citations omitted). The Commissioner must show at step five that "given [the] claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979)); *see also* 20 C.F.R. § 404.1560. At this step, whether a claimant will receive benefits depends on the Commissioner's finding that the claimant is unable to perform work available in sufficient numbers in the national economy. *Zirnsak*, 777 F.3d at 612.

## III.  DISCUSSION

Based on the Court's review of the ALJ's decision and the record in the present case, the Court finds good cause to remand the matter. Notably, in reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981). In *Cotter*, the Third Circuit recognized "the statutory function of judicial review." *Id.* at 705. According to the Third Circuit, "In this regard we need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* Indeed, "ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). Moreover, the reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

7

As part of the review, courts "must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)). "[W]here there is conflicting evidence, the ALJ must explain which evidence [s]he accepts and which [s]he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007). In addition:

> [A]n [ALJ's] findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Cotter*, 642 F.2d at 705.

The ALJ in the present case provided insufficient analysis for the Court to find that her RFC determination was supported by substantial evidence. Notably, the issue raised by the ALJ several times during the administrative hearing was not adequately addressed—or even discussed—in the ALJ's decision. Specifically, the colloquy regarding Plaintiff's RFC and the decision's lack of analysis regarding a medium versus a light RFC detracts from the weight of the ALJ's decision.

In her written opinion, the ALJ found that:

> [D]uring the course of an [eight]-hour workday, [Plaintiff] retains the [RFC] to perform less than full range of medium work. He is able to lift 50 lbs. occasionally and 25 lbs. frequently; carry 50 lbs. occasionally and 25 lbs. frequently; sit for 6 hours, stand for 6 hour[s] and push/pull as much as [he] can lift/carry. He is able to frequently reach overhead to the left, and frequently reach overhead to the right. For all other reaching, he can reach frequently to the left, and can reach frequently to the right. He can handle items frequently with the left hand, and can handle items frequently with the right hand. He has fingering limitations frequently with the left

hand, and has fingering limitations frequently with the right hand. [Plaintiff] has feel limitations frequently on the left, and has feel limitations frequently on the right.

(AR 22.)

The ALJ's finding that Plaintiff is capable of a limited range of medium work in the opinion, however, contradicts her statements at the administrative hearing that Plaintiff should be classified as capable of light work. Indeed, the record of the administrative hearing reflects that the ALJ repeatedly stated her belief that Plaintiff met the light classification under the Medical-Vocational Guidelines regarding the RFC assessment.[2] Shortly after the hearing commenced, the ALJ engaged in the following colloquy with Plaintiff's counsel:

> ALJ: Yeah. So here's where [I am] going with this **and you know he grids at light.**[3]
> 
> \* \* \* \*
> 
> ALJ: Yeah. . . . So [he would] grid out for the whole period if he was at light.
> ATTY: Yeah.
> ALJ: **So really what [I am] trying to focus[] on [is] when did he move from medium to light.**
> ATTY: Right.
> ALJ: **Maybe he was always at light.**
> ATTY: I think –
> ALJ: But you know the –
> ATTY: Yeah.
> ALJ: -- original evaluation from the field office people was that he was at medium.
> ATTY: Right.

---

[2] Only once at the administrative hearing did the ALJ equivocate about Plaintiff's potential to be classified as able to complete medium work. She stated: "And [we will]–I guess [we will] see if there are jobs at medium. I'm not convinced that this is his RFC but [we will]–[we will] do that anyway." (AR 59.)

[3] In this context, the ALJ is referring to the policy of the Social Security Administration to refer to the Medical-Vocational guidelines colloquially as "grid rules" in the assessment of a claimant who fails to meet a listing at step three and is determined unable to complete past relevant work at step four of the sequential evaluation. 20 C.F.R. 404, App'x 2, sbpt. P.

> ALJ: And as I said, when I–I took a look at–[it is] **clear to me that [he is] at light from probably 2016 and from the ortho CE but maybe further back since – from then.**
> ATTY: Yeah. Yes.
> ALJ: So anyway, [that is] – **so I just wanted to let you know [that is] where [I am] going with this**.

(*Id.* at 39-40) (emphasis added).

Shortly later in the hearing, the ALJ returned to the issue:

> ALJ: [I am] having a little issue with light RFC. [I am] trying to figure out the actual date on when he might be at a light level.
>
> \*   \*   \*   \*
>
> ALJ: -- for sure – **yeah, he gets [a] light level because of the end duration at the very least**.

(*Id.* at 49-50) (emphasis added). Later in the hearing, directly before the VE's testimony, the ALJ stated, "So what we're going to do is I'm going to call our [VE] and just take some quick testimony. As I said, I know that he grids at light." (*Id.* at 59).

The ALJ clearly represented during the administrative hearing that she believed Plaintiff was only capable of light work. Here, the repeated, definitive statements by the ALJ to Plaintiff's attorney regarding a "light" finding demonstrate a reservation by the ALJ that detracts from a finding of medium work. The ALJ's statements during the administrative hearing also detracted from the development of a full and fair record. To be clear, the ALJ's statements during the hearing do not preclude her from ultimately finding that Plaintiff's RFC includes a limited range of medium work. The ALJ's failure to address the dissonance between her statements at the hearing and her conclusion in the decision, without adequate reasoning, however, prevents the Court from concluding that the decision is supported by substantial evidence.

Because the ALJ's RFC analysis impacts the subsequent steps of the sequential analysis, the Court declines to reach steps four and five. Upon remand, the ALJ should give further

consideration to Plaintiff's maximum RFC and provide appropriate rationale with specific references to evidence of record.

IV. **CONCLUSION**

For the foregoing reasons, this matter is remanded for further proceedings. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: March 31, 2019